**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. ID-19-1198-BGL |
| RALPH DEAN ISOM and PAULA ISOM;<br>I & S FARMS, A General Partnership, | Bk. No. 4:15-bk-40763 |
| Debtors. | |
| RALPH DEAN ISOM; PAULA ISOM; I & S<br>FARMS, A General Partnership, | |
| Appellants, | |
| v. | **MEMORANDUM**[*] |
| R. SAM HOPKINS, Chapter 7 Trustee;<br>BRAD HALL & ASSOCIATES, INC.;<br>FARMS, LLC, | |
| Appellees. | |

Argued and Submitted on February 27, 2020
at Pasadena, California

Filed – April 22, 2020

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the District of Idaho

Honorable Joseph M. Meier, Chief Bankruptcy Judge, Presiding

———

Appearances:    Brent T. Robinson of Robinson & Associates argued for
appellants Ralph Dean Isom, Paula Isom, and I & S Farms;
James Alphonse Spinner of Service, Spinner & Gray argued
for appellee R. Sam Hopkins, Chapter 7 Trustee; Robert J.
Maynes of Maynes Taggart PLLC argued for appellees Brad
Hall & Associates, Inc., and Farms, LLC.

———

Before:    BRAND, GAN and LAFFERTY, Bankruptcy Judges.

**INTRODUCTION**

Appellants Ralph Dean Isom, Paula Isom, and I & S Farms (collectively

"Isoms") appeal an order approving a compromise between the chapter 7[1]

trustee and co-appellees Brad Hall and Associates, Inc. and Farms, LLC

(together "Hall"). The Isoms also appeal the order denying reconsideration of

the compromise order. Appellees argue that we lack jurisdiction over the

compromise order, because the Isoms included only the reconsideration

order in their initial notice of appeal. Appellees also argue that the appeal is

equitably moot, because the settlement has been substantially consummated

———

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of
Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil
Procedure.

and would be extremely difficult to unwind.

We conclude that we have jurisdiction over the compromise order, and that the appeal is not equitably moot. We further conclude that the bankruptcy court did not abuse its discretion in approving the compromise. Accordingly, we AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Prepetition events

Prior to their bankruptcy filing, the Isoms owned and operated a farm in Idaho (the "Farm"). The Farm was encumbered by two mortgages securing two promissory notes in favor of Rabo Agrifinance. The Rabo liens also covered all water rights associated with the Farm, including what is known as the Palisades Water Shares, and all irrigation equipment and fixtures upon the Farm.

The Isoms defaulted on the Rabo loans. In June 2014, Rabo obtained a judicial foreclosure judgment. Shortly thereafter, Rabo assigned to Hall the mortgages, the promissory notes and the foreclosure judgment in exchange for $5.95 million. Around this same time and in an apparent attempt to avoid foreclosure, the Isoms sought a loan using the Farm as collateral. At that time, the Farm appraised for $11.4 million. The loan was never funded due to the clouded title issues.

In September 2014, the Isoms and Hall entered into a deed-in-lieu of foreclosure agreement, whereby the Isoms delivered deeds for the Farm to

Hall and Hall released all claims against the Isoms based upon the Rabo loans and foreclosure judgment. The Isoms also conveyed to Hall all water rights, including the Palisades Water Shares, any appurtenances thereto, and all irrigation equipment and fixtures upon the Farm.

A few days later, Hall entered into a lease agreement with the Isoms for the Farm. The lease included an option for the Isoms to purchase the Farm back from Hall. Ultimately, the Isoms defaulted on the lease and were unable to exercise the option.

The Isoms also owned a rental house and a 10-acre parcel with a shop. In 2015, PacifiCorp obtained a default judgment against the Isoms for $406,698.23. PacifiCorp's judgment lien fully encumbered the rental house and the 10-acre parcel. During the Isoms' bankruptcy case, Hall purchased PacifiCorp's judgment lien claim as well as other third-party unsecured claims totaling nearly $900,000.

**B.    Postpetition events**

The Isoms filed a chapter 11 bankruptcy case on July 31, 2015. I & S Farms filed a chapter 11 case fourteen months later. The cases were consolidated in April 2017.

While in chapter 11, the Isoms filed an adversary proceeding against Hall, seeking to avoid the transfer of the Farm by the deed-in-lieu of foreclosure under § 548 and Idaho Code §§ 55-913 and 55-914. The Isoms maintained that the transfer was constructively fraudulent:  (1) they received

4

less than reasonably equivalent value — the Farm was valued at $11.4 million at the time of the deed-in-lieu and the transfer to Hall satisfied approximately $6.5 million in debt; and (2) as a result of the transfer, they became insolvent.

When the Isoms' consolidated case was converted to chapter 7,[2] R. Sam Hopkins was appointed as the trustee ("Trustee"). He continued to prosecute the avoidance action against Hall.

### 1. Settlement with Hall

Trustee and Hall ultimately reached a settlement of the avoidance action. Per the terms of the settlement agreement:

- Hall would subordinate all unsecured claims ($892,297.84) and administrative claims ($70,469.19) filed and acquired during the bankruptcy, to all other allowed administrative, priority, and unsecured claims;

- Hall would pay Trustee $300,000, which together with current funds in the estate would pay all other unsecured and priority claims;

- Trustee would dismiss the adversary proceeding against Hall with prejudice;

- Trustee would assign to Hall the right to pursue and recover potential assets of the estate, including Aladdin's Flowers, LLC — a flower shop allegedly co-owned by Mr. Isom and his sister;

- Trustee would acknowledge Hall's secured judgment liens on the rental house and 10-acre parcel; and

---

[2] The Isoms were ultimately denied a discharge under § 727(a)(6)(A).

- the parties would release all claims between them.

## 2. The motion to compromise

Trustee then moved for approval of the settlement. He argued that it was fair and equitable and more favorable than a possible sale of the Farm, if recovered from Hall after potentially lengthy and costly litigation.

The Isoms objected to the settlement, arguing that it was not fair and equitable. Hall was receiving $13 million in assets (the $12 million Farm, Palisades Water Shares worth $400,000, the rental house and 10-acre parcel worth $200,000, irrigation handlines worth $355,000 and air tubes worth $20,000) in exchange for only $6.75 million (the $6.2 million foreclosure judgment, $250,000 Hall paid to KeyBank to release a secured lien on the Farm, and $300,000 cash). The Isoms argued that Trustee owed them a fiduciary duty as beneficiaries of the residual of the bankruptcy estate, and he was not considering their best interest in the settlement.

As to the merits of the avoidance claims, the Isoms argued that Trustee had not conducted a solvency analysis. The Isoms claimed that they were rendered insolvent after the deed-in-lieu, with a negative net worth of $540,000. The transfer also left them with an unreasonably small capital, and they were unable to pay their debts as they came due.

Several months later, after the parties conducted more discovery, the bankruptcy court held a five-day evidentiary hearing on the settlement. Several witnesses testified including Mr. Isom, Trustee, and accountants for

6

the Isoms and Trustee. The parties presented competing evidence regarding the value of the Farm and whether a sale would result in a surplus. In addition, Trustee testified that it would be difficult to prove the Isoms' insolvency if the avoidance action were pursued. They had been less than forthcoming with information about their assets, and some assets were never turned over despite a turnover order. Further, their bankruptcy schedules contained many errors, and Trustee had little confidence in what few financial records he was able to get from them.[3]

### 3. The bankruptcy court's ruling on the compromise motion

On May 28, 2019, the bankruptcy court entered an oral ruling and written order approving the compromise ("Compromise Order"). In reviewing the four factors under *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377 (9th Cir. 1986), the court found that it was fair and equitable, that Trustee had exercised his reasonable business judgment, and that the settlement fell above the lowest point in the range of reasonableness.

The Isoms timely filed a motion to alter or amend the Compromise Order, which the bankruptcy court denied on July 24, 2019 ("Reconsideration Order"). The Isoms filed a notice of appeal on August 5, 2019. Only the Reconsideration Order was attached to the notice. They then filed an amended notice of appeal on August 21, 2019, to include the Compromise

---

[3] Mr. Isom testified that many of his legal papers, including closing documents for the Isoms' various properties, were in a safe that was stolen and thrown in a ditch. Mr. Isom also testified that he personally set fire to boxes of papers in his driveway.

Order.

## C.  Post-appeal events

The Isoms unsuccessfully moved for a stay pending appeal before the bankruptcy court and the BAP. Appellees then moved to dismiss the appeal for two reasons:  (1) an appeal of the Compromise Order was untimely because it was not attached to the Isoms' initial notice of appeal; and (2) even if the appeal of the Compromise Order was timely, it was equitably moot. The motions panel denied the motion to dismiss. It deferred consideration of the timeliness issue to the merits panel. It further determined that appellees had not met their burden of establishing mootness, but left that issue open for the merits panel to consider.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (N). Subject to our discussion below, we have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1.     Do we have jurisdiction to review the Compromise Order?

2.     Is the appeal equitably moot?

3.     Did the bankruptcy court abuse its discretion in approving the compromise?

4.     Did the bankruptcy court abuse its discretion in denying the motion to alter or amend?

## IV. STANDARDS OF REVIEW

We examine our own jurisdiction, including questions of mootness, de novo. *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (9th Cir. BAP 2014).

We review the bankruptcy court's decision to approve a compromise for an abuse of discretion. *Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.)*, 292 B.R. 415, 420 (9th Cir. BAP 2003). Likewise, we review the bankruptcy court's denial of a motion to alter or amend judgment under Civil Rule 59(e) for abuse of discretion. *Ocwen Loan Serv., LLC v. Marino (In re Marino)*, 577 B.R. 772, 781 (9th Cir. BAP 2017).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, or misapplies the correct legal standard, or if it makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## V. DISCUSSION

### A.    We have jurisdiction to review the Compromise Order.

Trustee and Hall argue that we lack jurisdiction to consider the Compromise Order because the initial notice of appeal attached only the Reconsideration Order, and the amended notice of appeal, which now included the Compromise Order, was filed long after the 14-day appeal period for that order had run. As a result, Trustee and Hall argue that the

9

scope of the appeal is limited to the Reconsideration Order.

Rule 8002 provides that, if a party timely moves to alter or amend a judgment under Rule 9023, then the 14-day deadline under Rule 8002 for filing an appeal runs from entry of the order disposing of the last such motion outstanding. If the motion is timely under Rule 9023, we have jurisdiction to review both the underlying order and the order denying reconsideration. *Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 866 n.5 (9th Cir. BAP 2004) (distinguishing between appeal of an order denying a Rule 9024 motion and appeal of a timely Rule 9023 motion). Here, the motion to alter or amend was filed within 14 days after entry of the Compromise Order, and the initial notice of appeal was filed within 14 days after entry of the Reconsideration Order. We thus have jurisdiction to review the Compromise Order.

As for the Isoms' failure to attach the Compromise Order in the initial notice of appeal, Rule 8003(a)(3)(B) requires attachment of the appealed order. Although there is no controlling authority interpreting the scope of Rule 8003, the U.S. Supreme Court and the Ninth Circuit Court of Appeals have set forth general principles regarding the interpretation of Federal Rule of Appellate Procedure 3(c)(1),[4] which is similar to Rule 8003(a)(3)(B). *See Smith v. Barry*, 502 U.S. 244, 248 (1992); *Le v. Astrue*, 558 F.3d 1019, 1021-22 (9th Cir. 2009). Although the dictates of FRAP 3 are jurisdictional in nature,

---

[4] FRAP 3(c)(1)(B) requires that a notice of appeal "designate the judgment, order, or part thereof being appealed."

"[c]ourts will liberally construe the requirements of [FRAP] 3" when determining compliance. *See Smith,* 502 U.S. at 248.

When a party seeks to argue the merits of an underlying order that does not appear on the notice of appeal, the reviewing court will generally consider (1) whether the intent to appeal a specific judgment is fairly inferred and (2) whether the appellee will be prejudiced by the mistake. *Lolli v. Cty. of Orange,* 351 F.3d 410, 414 (9th Cir. 2003) (interpreting FRAP 3). When examining both factors, courts should consider "'whether the affected party had notice of the issue on appeal and, second, whether the party had an opportunity to fully brief the issue.'" *Le*, 558 F.3d at 1022 (quoting *Meehan v. Cty. of L.A.,* 856 F.2d 102, 105 (9th Cir. 1988)). "'Where the appellee has argued the merits fully in its brief, it has not been prejudiced by the appellant's failure to designate specifically an order which is subject to appeal.'" *Id.* at 1025 (quoting *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 772 (9th Cir. 1991)).

First, the Isoms' intent to appeal the Compromise Order can be fairly inferred. The initial notice of appeal filed on August 5, 2019, states: "The primary issues on appeal include, but are not limited to: 1. The Court erred in granting Trustee's Motion to Approve Compromise . . . ." The Isoms' intent to appeal the Compromise Order is also clear upon review of their opening brief, which focuses entirely on the errors they assert the bankruptcy court made in approving the settlement. Leaving aside any timeliness issue, the

11

Isoms' amended notice of appeal, which included the Compromise Order, further demonstrates their intent to appeal it. Thus, because the Isoms' intent to appeal the Compromise Order was clear, it gave Trustee and Hall notice of the issue on appeal. Second, there is no prejudice to Trustee and Hall if we review the Compromise Order. Both parties had a full opportunity to, and did, address the order in their appellate briefs.

Accordingly, we conclude that this appeal encompasses both the Compromise Order and the Reconsideration Order. We now turn our focus to the appellees' second argument challenging our jurisdiction, that the appeal is equitably moot.

**B.     The appeal is not equitably moot.**

Trustee and Hall argue that the appeal is equitably moot because the Isoms failed to seek a stay in a timely manner or obtain one and, as a result, the settlement has been substantially consummated and would be extremely difficult to unwind.

We may dismiss an appeal if we deem it equitably moot. *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33-35 (9th Cir. BAP 2008). Equitable mootness is "a judge-made abstention doctrine unrelated to the constitutional prohibition against hearing moot appeals." *Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 1211, 1214 (9th Cir. 2014). "Equitable mootness occurs when a comprehensive change of circumstances has occurred so as to render it inequitable for this court to consider the merits of

the appeal. The question is whether the case presents transactions that are so complex or difficult to unwind that the doctrine of equitable mootness would apply." *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012). In other words, "[e]quitable mootness concerns whether changes to the status quo following the order being appealed make it impractical or inequitable to unscramble the eggs." *Castaic Partners II, LLC v. Daca–Castaic, LLC (In re Castaic Partners II, LLC)*, 823 F.3d 966, 968 (9th Cir. 2016).

The Ninth Circuit follows a four-step process to determine whether an appeal is equitably moot:

> We will look first at whether a stay was sought, for absent that a party has not fully pursued its rights. If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred. Next, we will look to the effect a remedy may have on third parties not before the court. Finally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court.

*In re Thorpe Insulation Co.*, 677 F.3d at 881. Applying this four-factor test, we conclude that the appeal of the Compromise Order is not equitably moot.

The Isoms sought, but were unsuccessful at obtaining, a stay of the Compromise Order from both the bankruptcy court and the BAP. Trustee and Hall fault the Isoms for not seeking a stay in a more timely manner, waiting over ten weeks after the Compromise Order was entered. It appears that the

13

delay was due to the Isoms waiting for resolution of their motion to alter or amend the Compromise Order. Once it was denied, they promptly sought a stay from the bankruptcy court. And when the court denied the request, the Isoms promptly sought a stay from the BAP. Under the circumstances, we believe that the Isoms were diligent in their efforts and did not sit on their rights. The "failure to obtain a stay does not require a conclusion of equitable mootness where parties use due diligence in seeking the stay." *Id.* Thus, this factor does not weigh in favor of finding the appeal equitably moot.

We next consider whether substantial consummation of the settlement has occurred. Although *Thorpe* focused on plan consummation, we think the general principles apply to any equitable mootness analysis. *See Yang Jin Co. v. Miller (In re Kong)*, BAP No. CC-15-1371-KiTaL, 2016 WL 3267588, at *6 (9th Cir. BAP June 6, 2016) (applying *Thorpe* to a Rule 9019 settlement); *Bonnett v. Gillespie (In re Irish Pub-Arrowhead, LLC)*, BAP No. AZ-13-1024-PaKuD, 2014 WL 486955, at *5 (9th Cir. BAP Feb. 6, 2014) (applying *Thorpe* to a § 363(f) sale order). Trustee and Hall maintain that the settlement has been substantially consummated: Hall paid Trustee the $300,000; Trustee transferred deeds for the rental house and 10-acre parcel to Hall; Trustee transferred and assigned personal property to Hall; Hall paid a backlog of property taxes owed and spent significant funds cleaning up and repairing the real estate; Mr. Isom has been evicted from the 10-acre parcel; Hall leased the farm ground for 2019 and is negotiating a lease for the 2020 growing season; Hall entered into buy-

sell agreements for two of the homes, and the sale of the rental house closed in September 2019. Although the bankruptcy court recently dismissed the avoidance action against Hall with prejudice, it was only dismissed due to the settlement and Trustee's and Hall's stipulation. Were we to reverse the Compromise Order, the adversary proceeding could be revived. In addition, Trustee has not distributed any of the $300,000 to unsecured creditors.

At best, this factor is neutral. However, even if it weighs in favor of mootness, we are still required to look at the third and fourth prongs of the equitable mootness test. *Rev Op Grp. v. ML Manager LLC (In re Mortgs. Ltd.)*, 771 F.3d 623, 629 (9th Cir. 2014) (substantial consummation does not, by itself, render an appeal moot, and the appellate court must still consider whether, despite substantial consummation, it can fashion effective relief).

The third and fourth *Thorpe* factors require us to consider the effects of any available remedy on third parties not before the court and whether such remedy would create a difficult and essentially unmanageable situation for the bankruptcy court. As to the third factor, "the question is not whether it is possible to alter a plan such that no third party interests are affected, but whether it is possible to do so in a way that does not affect third party interests to such an extent that the change is inequitable." *In re Thorpe Insulation Co.*, 677 F.3d at 882. In considering the fourth factor, where the court can grant some relief, even if such relief is incomplete, the appeal is not equitably moot. *Id.* at 883. We conclude that both of these factors weigh

against a finding of equitable mootness.

Because Trustee has not distributed the settlement funds to unsecured creditors, the only third party possibly affected that is not before us is the party to whom Hall sold the rental house. The rental house was subject to liens that Hall acquired from PacifiCorp and was completely underwater. Instead of Hall having to foreclose, Trustee transferred to Hall the deed for the property. Hall has not revealed the identity of the third-party purchaser, or its relationship, if any, to Hall. It is also not clear whether the sale of the other home has closed or if Hall has entered into a farming lease with anyone for the 2020 growing season. Thus, the absence of any specifics from Hall about the purchaser of the rental house or any other potential purchaser(s) and lessee(s) makes us question whether relief cannot be afforded.

At bottom, Trustee and Hall have not shown that the bankruptcy court could not fashion any effective relief without unduly or inequitably impacting third parties. At the heart of the settlement was the dismissal of the avoidance action against Hall that sought to avoid the deed-in-lieu and recover the Farm for the estate. If we were to reverse the Compromise Order and Trustee were ordered to pursue the litigation and prevailed, the value of the Farm could be recovered, even if the property itself could not. Even a partial remedy is sufficient to prevent a case from being moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996).

16

## C. The bankruptcy court did not abuse its discretion in approving the compromise.

### 1. Governing law

Rule 9019 provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." The court may approve a compromise or settlement only when it is "fair and equitable." *In re A & C Props.*, 784 F.2d at 1381. The settlement should be in the best interests of the estate and "reasonable, given the particular circumstances of the case." *Id.* And while a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter, the trustee "has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." *Id.* "Because the bankruptcy judge is uniquely situated to consider the equities and reasonableness of a particular compromise, approval or denial of a compromise will not be disturbed on appeal absent a clear abuse of discretion." *United States v. Alaska Nat'l Bank of the N. (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982).

When deciding the "fairness, reasonableness and adequacy" of a proposed settlement agreement, the bankruptcy court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Props.*, 784 F.2d at 1381. No one factor is dispositive; the "factors should be considered as a whole to determine whether the settlement compares favorably with the expected rewards of litigation." *Greif & Co. v. Shapiro (In re W. Funding, Inc.)*, 550 B.R. 841, 851 (9th Cir. BAP 2016). "When assessing a compromise, courts need not rule on disputed facts and questions of law, but rather only canvass the issues. A mini trial on the merits is not required." *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (9th Cir. BAP 1997).

### 2.    Analysis

The bankruptcy court thoroughly reviewed the evidence and made detailed findings with respect to each *A & C Properties* factor.

For the first factor—probability of success in the litigation—the court found that it was neutral. In reviewing the elements for avoiding a transfer under § 548(a)(1)(B) and similar Idaho Code §§ 55-913 and 55-914, the court determined that it was unclear whether the Isoms received reasonably equivalent value for the deed-in-lieu given the lease and purchase option. Insolvency was even more hotly contested by the parties, and the evidence of the Isoms' insolvency after the deed-in-lieu was "muddied at best." Because of this, the court determined that it was unclear whether Trustee would succeed in showing that the Isoms were insolvent or left with an unreasonably small capital after the deed-in-lieu.

For the second factor—difficulty in collection—the court found that it

weighed against the settlement. The Farm could be brought back into the estate and sold by Trustee for cash.

For the third factor—complexity, expense, inconvenience and delay of litigation—the court found that it weighed in favor of the settlement. Besides the complex issues of reasonably equivalent value and insolvency, there was also: (1) the likelihood that Hall would appeal any avoidance judgment and the interest that would accumulate on the foreclosure judgment while that appeal was pending; (2) the need to resolve any issues pertaining to lenders that now held mortgages against the Farm; (3) the need to market and sell the Farm, which could take months and require the estate to bear costs of sale of up to 5%; (4) the need to determine proper figures for the tax basis and net operating loss ("NOL") once the Farm sold; (5) the issue of Hall's claims coming back into play if the deed-in-lieu was avoided and the litigation that may result in resolving some or all of those claims; and (6) the fact that any non-prevailing party could appeal any final order on the above issues causing further delay in the administration of the estate.

Lastly, the court found that the fourth factor—paramount interest of creditors—weighed in favor of the settlement. The court noted that under the terms of the settlement agreement, administrative claims and non-Hall creditors would be paid in full, and Hall's subordinated claims could be paid, at least in part, with any funds remaining. Furthermore, if the settlement were not approved, it was not clear when or how much creditors would

receive on their claims. Even if the Isoms were correct that they would fare better with Trustee pursuing the avoidance action and selling the Farm, they were not a creditor. Thus, the court concluded that it did not have to consider their interests under *A & C Properties*.[5]

The Isoms assign several errors by the bankruptcy court in approving the settlement, many of which go to the court's findings of fact and their disagreement with how it weighed the evidence. We address their arguments in turn.

First, the Isoms argue that the bankruptcy court erred in finding that

---

[5] We do make one observation about the bankruptcy court's ruling that the debtor's interest is not something that must be considered under the fourth *A & C Properties* factor in approving a settlement. While that may be "technically" true, where there are surplus funds, the trustee also owes a fiduciary duty to the debtor. *See Wisdom v. Gugino*, 649 F. App'x 583, 584 (9th Cir. 2016) ("When a debtor retains an interest in estate assets — either by properly claiming exemptions **or because surplus property will remain in the estate after all creditors have been compensated — the trustee owes a fiduciary duty to the debtor as well.**") (emphasis added); *Stoll v. Quintanar (In re Stoll)*, 252 B.R. 492, 495 n.4 (9th Cir. BAP 2000) ("When as in this case an estate will have a surplus that will be returned to the debtor after all of the creditors have been paid in full, the debtor has an economic interest in the estate that is similar to that held by the creditors who will be paid from the estate.").

Because this was potentially a surplus case, the bankruptcy court was required to also consider the Isoms' best interest in approving the settlement. Despite its statement to the contrary, the court did engage in that analysis and concluded that settlement as opposed to litigation was in their best interest. It found that the existence of a seven-figure payoff to the Isoms was speculative and not a legitimate basis upon which to reject the settlement. The court noted, while it might be fair and equitable to reject a settlement if a competing path would result in a clear benefit to the debtor, this was not that case. We perceive no error here.

Trustee exercised due diligence and complied with the business judgment rule. For example, they argue that Trustee failed to ascertain the full value of the Farm and to investigate potential offers for the sale of the property. They argue that Trustee failed to follow up on an offer from Riverbend to purchase the Farm for $13 million. As the bankruptcy court noted, Riverbend's letter expressing interest in purchasing the Farm was merely a non-binding letter of intent, not an actual offer accompanied with earnest funds. Further, contrary to the Isoms' assertion, Trustee testified that he did follow up on the letter, but Riverbend, who is a neighbor of the Isoms and possibly an insider, never responded. On that same note, the Isoms also complain that Trustee's costs of sale figure of 5% was pure speculation and unsupported, especially when Riverbend was interested in purchasing the Farm in a private sale without a broker. Again, the bankruptcy court believed that costs of sale of "up to 5%" was plausible considering that the Riverbend letter was not an actual offer. These findings are not so illogical or implausible as to constitute clear error.

Next, the Isoms argue that Trustee failed to investigate the Farm's tax basis and whether or not there was an NOL. These two issues were hotly contested by the parties. In its discretion, the court chose to give more credence to Trustee's asserted NOL and tax basis analysis. As the court correctly noted, this was not a mini trial on the merits of the avoidance action. That the Farm's tax basis in particular was so heavily contested only showed the court that Trustee would have to invest further time and resources to

21

determine the proper amount in the event of a sale. In any case, the issues of sales price, the amount of a broker commission, tax basis and NOL were just some of the many factors for the court to consider in deciding if the proposed settlement was fair and reasonable and in the best interest of the estate.

The Isoms also argue that the bankruptcy court erred by considering only balance-sheet insolvency under § 548(a)(1)(B)(ii)(I) and ignoring the other factors in § 548(a)(1)(B)(ii)(II) and (III) to determine that Trustee would not be successful in avoiding the deed-in-lieu. The bankruptcy court did consider the other factors in § 548(a)(1)(B)(ii)(II) and (III). After finding that evidence of the Isoms' insolvency was "muddied at best," the court found that it was "unclear" whether Trustee could establish their insolvency, or that they were left with an unreasonably small capital after the deed-in-lieu. While the court did not specifically discuss (III)—that the Isoms were unable to pay their debts as they came due—the Isoms do not explain how this would change the outcome. What matters here is that the court found that the issue of their solvency was not clear, would be vigorously contested, and this fact added to the complexity of the litigation and the expense, delay and inconvenience necessarily attending it.

Next, the Isoms argue that the bankruptcy court's concern about accruing interest on Hall's secured debt if the settlement was not approved was misplaced. They maintain that under § 550(e)(1), rents Hall received during the pendency of the case are profits that would offset any accruing

interest that would accumulate while the case and any appeals were pending. The court concluded that rents Hall received likely exceeded any improvements or expenses incurred and therefore precluded a § 550(e)(1) claim. However, that did not resolve the issue that if Hall's secured claim was revived, interest was accruing at over $1 million per year, the parties had already been litigating for four years, and interest would continue to accrue on the debt during the pendency of an appeal. In essence, the interest accrual would wipe out any potential surplus gained from litigation if Trustee prevailed. The Isoms apparently disagree. In any event, the court did not need to determine this legal issue for purposes of approving a settlement under Rule 9019. It was sufficient that the court recognized that the issue of accrued interest added to the complexity, expense, inconvenience and delay of litigation.

The Isoms next argue that the bankruptcy court erred by not considering the fraudulent conveyance implications of the deed-in-lieu under the Idaho state law statutes, namely Idaho Code §§ 55-901 through 55-909. The court did not need to consider these statutes, because they apply to actual fraudulent transfers of either real or personal property. The Isoms did not plead any facts to support a claim for actual fraud as required by Civil Rule 9, nor did they present any evidence of actual fraud at the evidentiary hearing on the settlement. The Isoms cannot use this appeal as an attempt to amend their complaint, which is now under Trustee's control.

Lastly, the Isoms argue that the bankruptcy court erred by failing to consider the standards for the sale of an estate asset under § 363(b). While this argument has some facial appeal because there was a sale component to the compromise, we disagree that the court did not consider this in its analysis.

Because "the disposition by way of compromise of a claim that is an asset of the estate is the equivalent of a sale of the intangible property represented by the claim," a Rule 9019 compromise can "simultaneously implicate[] the sale provisions under section 363 as implemented by Rule 6004 and the compromise procedure of Rule 9019(a)." *In re Mickey Thompson Entm't Grp., Inc.*, 292 B.R. at 421. "When confronted with a motion to approve a settlement under Rule 9019(a), a bankruptcy court is obliged to consider, as part of the fair and equitable analysis, whether any property of the estate that would be disposed of in connection with the settlement might draw a higher price through a competitive process and be the proper subject of a section 363 sale." *Id.* at 421-22. Whether to impose formal sale procedures, however, is ultimately a matter of discretion that depends on the dynamics of the particular situation. *Id.* at 422. *See also Adeli v. Barclay (In re Berkeley Del. Ct., LLC)*, 834 F.3d 1036, 1040 (9th Cir. 2016). In other words, the court need not implement bidding procedures and an auction if the case does not call for it. *Sterling v. Green (In re Esterlina Vineyards & Winery, LLC)*, BAP No. NC-16-1428-TaBS, 2018 WL 1354331, at *4 (9th Cir. BAP Mar. 13, 2018).

The Isoms argue that the bankruptcy court erred by failing to analyze whether any property of the estate that was being disposed of in the settlement—i.e., the "millions of dollars in equity" in the Farm—might draw a higher price through a competitive process and be the proper subject of a sale under § 363(b). While the Isoms continue to focus on the value of the Farm as their gauge, the real issue here is what was the value of the avoidance action claim against Hall, the estate's disputed interest in Aladdin's Flowers, and the other purported estate assets that were subject to an ownership claim or lien by Hall—the Palisades Water Shares, the irrigation handlines and the air tubes. The motion to compromise was served on all creditors. The only opposition was filed by the Isoms. They did not make an offer to purchase the avoidance action claim, or the disputed interest in Aladdin's Flowers, or the other purported assets. There were no other bids.

This is not a situation like *Mickey Thompson*, where there was a competing higher bid and a trustee who thought that an auction might be beneficial but felt he was contractually bound by the proposed settlement agreement. And, unlike *Mickey Thompson*, there were actual "compromise" aspects to the settlement agreement; it was not merely a sale of an estate asset to the settling party disguised as a compromise. 292 B.R. at 420-21. While the bankruptcy court did not make any specific § 363(b) findings, it did find as part of its "fair and equitable" analysis under *A & C Properties* that the complexity of the litigation and the difficulty with prevailing on the

avoidance action claim was created by the Isoms, who only amended schedules to list assets after they were discovered by Trustee, failed to turn over assets under a court order, and intentionally destroyed business records by setting them on fire. The court also carefully analyzed the value to the estate of each of the other assets that were transferred to Hall. It found that each was the source of continuing litigation and heavily disputed, including Aladdin's Flowers, where the amount of Mr. Isom's ownership interest in the entity was in dispute. Therefore, given the record, there is no basis to believe that an auction would have resulted in more value for the estate.

Despite the Isoms' arguments to the contrary, we conclude that the record amply supports the bankruptcy court's decision to approve the compromise.

**D.    The Isoms have waived their appeal of the Reconsideration Order.**

Even though the Isoms appealed the Reconsideration Order, they did not provide any argument on the issue in their opening brief. Accordingly, it has been waived. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."). However, even if we had reviewed the matter, we would have found no abuse of discretion by the bankruptcy court in denying the motion to alter or amend. The motion was essentially a rehash of the issues that had been fully briefed, litigated, and considered by the court in approving the compromise.

26

## VI. CONCLUSION

For the reasons stated above, we AFFIRM the Compromise Order and we AFFIRM the Reconsideration Order.